UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| RICHARD B. SMITH, | : | |
| | : | |
| Plaintiff, | : | Civil Action No.:   12-296 (RC) |
| | : | |
| v. | : | Re Document No.:   28 |
| | : | |
| DE NOVO LEGAL, LLC | : | |
| | : | |
| Defendant. | : | |

**MEMORANDUM OPINION**

GRANTING IN PART AND DENYING IN PART THE DEFENDANT'S MOTION TO DISMISS

**I.  INTRODUCTION**

The plaintiff in this matter alleges that he was subjected to a hostile work environment and retaliation in violation of Title VII and 42 U.S.C. § 1981.  Now before the court is the defendant's motion to dismiss.  For the reasons explained below, the court will dismiss the plaintiff's hostile work environment claim but allow his retaliation claim to proceed to discovery.

**II.  FACTUAL ALLEGATIONS AND PROCEDURAL HISTORY**

The plaintiff is a white contract attorney who alleges that he suffered racial discrimination at the hands of his black co-workers.  The plaintiff's employment only lasted for three months.  3d Am. Compl. ¶ 2.  The plaintiff's claim revolves around a handful of awkward interactions with his co-workers whenever their conversation turned to the subject of race.  For instance, one day at work, a co-worker stated, "I voted for Obama because of the melanoma [sic] in his skin.  I voted for Obama because he is black."  The plaintiff claims that he was "humiliated and intimidated."  Although another co-worker told him that it was just a joke, the plaintiff remained offended and humiliated by their laughter.  *Id.* ¶¶ 3–4.  A few days later, another co-worker asked about the plaintiff's heritage.  The plaintiff said that he was of English/Irish stock.

The co-worker responded by indicating that the plaintiff had African roots, "because everyone is from Africa." According to the plaintiff: "This was an attempt to establish African heritage as superior to my heritage. Again, I felt humiliated and intimidated." *Id.* ¶ 5. Later, the plaintiff was speaking with a co-worker regarding the inflammatory comments of a New Black Panther who had once stated: "You want freedom? You will have to kill some crackers. You're going to have to kill some of their babies!" Another co-worker (somewhat ambiguously) interjected: "That is every day in America." The plaintiff interpreted this "to be a threat of violence." He maintains that he felt "shocked and scared." *Id.* ¶ 6.

At some point, the plaintiff was accused of making racist remarks. *Id.* ¶ 8. In a conversation with his supervisor, the plaintiff denied the accusation and insisted that he was the victim—not the perpetrator—of racial discrimination. *Id.* The supervisor did not investigate the plaintiff's allegation, however. Instead, the supervisor asked the plaintiff to change his seating. *Id.* ¶ 11. The plaintiff insists that he was nevertheless subjected to further acts of racial hostility. For instance, one day the plaintiff went to use a communal computer and he found the web browser open to a website called "Black Snob." *Id.* ¶ 12. In addition, a co-worker asked the plaintiff if he had any black friends. When the plaintiff refused to answer, the co-worker moved to the other side of the office and sat with several other black co-workers. *Id.* ¶ 13. The plaintiff "felt isolate [sic] and humiliated." *Id.* Approximately one month after he complained of racial discrimination to his supervisor, the plaintiff was fired. *Id.* ¶ 17.

### III. ANALYSIS

#### A. Legal Standard for a Motion to Dismiss Under Rule 12(b)(6)

All that the Federal Rules of Civil Procedure require of a complaint is that it contain a "short and plain statement of the claim" in order to give the defendant fair notice of the claim and the grounds upon which it rests. FED. R. CIV. P. 8(a)(2), *see Erickson v. Pardus*, 551 U.S.

89, 93 (2007). A motion to dismiss under Rule 12(b)(6) does not test a plaintiff's ultimate likelihood of success on the merits; rather, it tests whether a plaintiff has properly stated a claim. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). A court considering such a motion presumes the factual allegations of the complaint to be true and construes them liberally in the plaintiff's favor. *See, e.g.*, *United States v. Philip Morris, Inc.*, 116 F. Supp. 2d 131, 135 (D.D.C. 2000). It is not necessary for the plaintiff to plead all elements of his prima facie case in the complaint. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511–14 (2002); *Bryant v. Pepco*, 730 F. Supp. 2d 25, 28–29 (D.D.C. 2010).

Nevertheless, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) (internal quotation marks omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are therefore insufficient to withstand a motion to dismiss. *Id*. A court need not accept a plaintiff's legal conclusions as true, *id.*, nor must the court presume the veracity of legal conclusions that are couched as factual allegations. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

### B. Hostile Work Environment (Count I)

A plaintiff may establish a violation of Title VII by proving that the employer created or condoned a discriminatorily hostile or abusive work environment.[1] *Casey v. Mabus*, 2012 WL 2951372, at *4 (D.D.C. July 20, 2012); *see Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 64–67 (1986); *Gary v. Long*, 59 F.3d 1391, 1395 (D.C. Cir. 1995). Discrimination in this form occurs "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and

---

[1] The plaintiff's 42 U.S.C. § 1981 claim is assessed under the same legal standard. *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1114 n.3 (D.C. Cir. 2000).

create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (citation and internal quotation marks omitted). To determine whether a hostile work environment existed, the court must examine all the circumstances of a plaintiff's employment, including: the frequency of the discriminatory conduct, its severity, whether it was threatening and humiliating (or was merely offensive), and whether it unreasonably interfered with the employee's work performance. *Harris*, 510 U.S. at 23. But it is clear that "'simple teasing,' offhand comments, and isolated incidents (unless extremely serious)" will not constitute a hostile work environment. *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998)). These standards for judging hostility are sufficiently demanding to ensure that Title VII does not become a 'general civility code.'" *Id.* (quoting *Oncale*, 523 U.S. at 82).

In light of this demanding standard, the court concludes that the plaintiff has not set forth a plausible claim to relief. First of all, the court doubts that the defendant's alleged conduct could be characterized as "frequent." It instead appears that the plaintiff was exposed to a handful of unwelcome comments. *See Stewart v. Evans*, 275 F.3d 1126, 1134 (D.C. Cir. 2002) (noting that "a few isolated incidents do not amount to actionable harassment"); *Roof v. Howard Univ.*, 501 F. Supp. 2d 108, 114 (D.D.C. 2007) (same). It does not appear, based on the plaintiff's allegations, that the workplace was "*permeated* with discriminatory intimidation, ridicule, and insult." *See Harris*, 510 U.S. at 21 (emphasis added); *Baloch v. Kempthorne*, 550 F.3d 1191, 1201 (D.C. Cir. 2008) (concluding that the plaintiff's "assertion of pervasive and constant abuse is undermined by the sporadic nature of the conflicts"). If anything, the alleged conduct could only be deemed "frequent" because the plaintiff lists each and every incident that he found to be uncomfortable. Some of these statements were innocuous: for example, the

plaintiff was asked if he had any black friends. 3d Am. Compl. ¶ 13. Other acts were not directed at the plaintiff: for example, the plaintiff complains that he stumbled upon a website called "Black Snob," but it is not alleged that this act targeted him. *See Lester v. Natsios*, 290 F. Supp. 2d 11, 31 (2003) (noting that "[c]onduct directed at others rather than at plaintiff . . . is less indicative of a hostile work environment").

At the heart of the plaintiff's complaint, then, is the allegation that he was subjected to a few offhand comments: to wit, a co-worker's perplexing comment regarding the New Black Panther Party, another co-worker's comment on President Obama's skin tone, or another's wry observation that all humans are descended from ancestors in Africa. 3d Am Compl. ¶¶ 5–6. The court cannot conclude that these comments are severe enough to trigger liability under Title VII. For even if these incidents were indecorous, "a lack of racial sensitivity does not, alone, amount to actionable harassment." *Faragher*, 524 U.S. at 787. Even if the plaintiff's sensibilities were offended by the remarks, the "[m]ere utterance of an . . . epithet which engenders offensive feelings in an employee" does not constitute a hostile work environment. *Id.* Title VII is not meant to impose a "civility code" on the workplace. *Oncale*, 523 U.S. at 82. Viewed in their totality, these "offhand comments" and "isolated incidents" are not sufficiently severe to trigger Title VII's protections. *Id*. at 788. Finally, the plaintiff complains that he was asked to change his seating, but such a trivial inconvenience does not give rise to a viable claim. *See Casey v. Mabus*, 2012 WL 2951372, at *4 ("The plaintiff's exclusion from the planning and presentation of training courses were, at best, obnoxious discourtesies and, at worst, manifestations of organizational dysfunction. But in either case, these allegations fall far short of the extreme behavior contemplated by the protections of the hostile work environment doctrine."). Accordingly, the court will grant the defendant's motion to dismiss Count I.

### C. Retaliation (Count II)

To prove unlawful retaliation under Title VII, an employee must establish the following three elements: first, that he engaged in protected activity; second, that he was subjected to adverse action by the employer; and third, that there existed a causal link between the adverse action and the protected activity. *Jones v. Bernanke*, 557 F.3d 670, 677 (D.C. Cir. 2009).[2] The defendant has not challenged the plaintiff's allegation that he engaged in protected activity. The plaintiff's allegations also satisfy the second element because termination is undoubtedly an adverse employment action. *Douglas v. Donovan*, 559 F.3d 549, 552 (D.C. Cir. 2009). The only remaining element is causation, which may be inferred—especially at the pleading stage—when the retaliatory act follows close on the heels of the protected activity. Here, the plaintiff alleges that his employment was terminated only a month after he complained of racial discrimination. The timing is suspicious enough for the court to infer causation. *See Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273–74 (2001) (noting that close temporal proximity may give rise to an inference of causation); *Stone-Clark v. Blackhawk, Inc.*, 460 F. Supp. 2d 91, 98 (D.D.C. 2006) (concluding that a one-month lapse between protected activity and retaliation could give rise to an inference of causation). Thus, the plaintiff has adequately stated a *prima facie* case of retaliation.

The defendant argues that the plaintiff has not alleged that he was fired by someone who knew about the plaintiff's protected activity. *See Jones v. Bernanke*, 557 F.3d 670, 679 (D.C. Cir. 2009); *Newton v. Office of the Architect of the Capitol*, 840 F. Supp. 2d 384, 400 (D.D.C.

---

[2] The legal standard for the plaintiff's 42 U.S.C. § 1981 claim is identical. *CBOCS West., Inc. v. Humphries*, 553 U.S. 442, 457 (2008); *see Fair Emp. Council v. BMC Mktg. Corp.*, 28 F.3d 1268, 1279–80 (D.C. Cir. 1994) ("Implicit in § 1981 . . . is a cause of action protecting people from private retaliation for . . . exercising their own § 1981 rights.").

2012) (granting summary judgment on the plaintiff's retaliation claim because "[t]he person taking the allegedly retaliatory actions must have knowledge of the protected activity in order to retaliate for the activity").  But it would be premature to dismiss on this ground, for the plaintiff is not required to plead each and every element of his *prima facie* case.  *Bryant v. Pepco*, 730 F. Supp. 2d 25, 28–29 (D.D.C. 2010).  In addition, the defendant argues that the plaintiff was fired because "his project had ended."  At this early stage of the litigation, it is hard to see why this vaguely worded statement should insulate the defendant from liability.  Perhaps the defendant is hinting it had a legitimate, non-discriminatory reason for its acts, but that is a fact-sensitive inquiry that can only be undertaken after discovery has run its course.  *See Gill v. Mayor of District of Columbia*, 2007 WL 1549100, at *4 (D.D.C. May 25, 2007) (denying the defendant's motion to dismiss and concluding that "defendants are jumping ahead to the evidentiary standard established by *McDonnell Douglas* rather than the liberal pleading standard at the motion to dismiss stage").  Moreover, the abrupt fashion in which the plaintiff was terminated, *see* 3d Am. Compl., Ex. 1 ("Unfortunately the project has ended for you and today was your last day.  We will be sending your personal belongings to the address listed on file with us."), suggests that there may be more to this story than the simple ending of a term of employment.

In sum, the plaintiff alleges that he complained of racial discrimination to his supervisor, and shortly thereafter he was fired with little explanation.  These allegations are detailed enough to withstand the defendant's motion.  *See Arafi v. Mandarin Oriental*, 2012 WL 2021889, at *8 (D.D.C. June 6, 2012) (concluding that a plaintiff had plausibly alleged a Title VII retaliation claim even though it was "far from a model of clarity").  Accordingly, the court will deny the defendant's motion to dismiss Count II.

## IV.  CONCLUSION

For the aforementioned reasons, the court will grant in part and deny in part the defendant's motion.  An order consistent with this memorandum opinion is separately issued this 21st day of November, 2012.

RUDOLPH CONTRERAS<br>
United States District Judge